UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MUSTAFA MUBIN BAQI,

Plaintiff,

v.

JOHN L CAMPBELL, et al.,

Defendants.

Case No. 3:19-cv-06077-BJR-TLF

REPORT AND RECOMMENDATION

Noted for October 8, 2021

This matter is before the Court on defendants' motion for summary judgment. Dkt. 28. Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this 42 U.S.C. § 1983 action alleging that defendants failed to fully restore his good time credits and improperly made deductions from his prison trust account in violation of the Eighth and Fourteenth Amendments. This matter has been referred to the undersigned Magistrate Judge. *Mathews v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court grant defendants' motion and dismiss plaintiff's complaint.

PROCEDURAL HISTORY

Plaintiff Mustafa Mubin Baqi[1] is a former inmate of the Washington Department of Corrections ("DOC") who was housed in California during part of his confinement,

[1] Plaintiff was formerly known as Robert Calhoun. Dkt. 31 at ¶4. His Washington Department of Corrections records reflect his former name. *See*, *e.g.* Dkt. 31-1 at 15.

before returning to Washington prior to his release. Plaintiff initiated this case on November 13, 2019 and, with the leave of this Court, filed his amended complaint on October 27, 2020. Dkt. 24. Defendants filed a motion for summary judgment, together with a *Rand* notice and the declarations of defendants Gricelda Medina and Joiann Miller and nonparties Jordan McKinney and Dominga Soliz. Dkts. 28, 29, 30, 31, 32, 34. Despite the warning in the *Rand* notice that plaintiff must respond with admissible evidence supporting his claims, plaintiff has not filed a response. However, plaintiff's amended complaint was signed under penalty of perjury; accordingly, the factual allegations of the amended complaint will be considered as evidence to the extent that they assert facts based upon personal knowledge that would be admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## FACTS

Plaintiff contends that defendants violated his Eighth Amendment rights by holding him five months past his early release date, because they failed to restore all of the good time credit covered by an agreed 2016 pathway for restoring lost time. Dkt. 24 at 1. Plaintiff also claims that defendants violated his Fourteenth Amendment rights by making excessive deductions from his prisoner trust account when its funds were transferred from California to Washington. *Id*. at 1–2.

### A. Restoration of Good Time

DOC prisoners may be awarded Earned Release Time, including good conduct time. Dkt. 31-1 at 3. Pursuant to DOC Policy 350.100, prisoners can lose previously earned good conduct time for, among other reasons, serious infractions. Dkt. 31 at ¶3. Policy 350.100 also provides a process by which such lost time may be restored. *Id*.; Dkt. 31-1 at 3.

Before his transfer to California in 2009, plaintiff had multiple infractions that resulted in the loss of good conduct time. Dkt. 31-1 at 15. In 2014, he was awarded a restoration of 130 days.[2] Dkt. 31-1 at 32. On March 15, 2016, plaintiff and DOC agreed to a Pathway for Restoring Lost Time (the "Pathway"), which provided for the restoration of additional time if plaintiff complied with certain conditions. Dkt. 31-1 at 15–16. Specifically, the Pathway provided that plaintiff would receive an immediate restoration of 120 days and thereafter (provided plaintiff was in compliance with the terms of the Pathway) would receive 60 days at each future annual review, and 45 days at each semi-annual review. *Id*. The parties agree that plaintiff complied with the Pathway and was entitled to the restoration of lost good time, but plaintiff contends defendants did not restore enough time.

Plaintiff construes the plan to require the restoration of 150 days per year: 60 days at an annual review, and also 45 days semi-annually. Dkt. 24 at 4. He contends that if he had received the restoration of all of the time he calculates he was due, he would have been released five months earlier. Dkt. 24 at 1. Plaintiff also contends that the final restoration he received on November 9, 2018 should have been 45 days instead of the 30 days he received. Dkt. 24 at 7.

Defendants submitted evidence that a prisoner receives a classification review every twelve months (annually) if he has more than five years to serve before his Earned Release Date. Dkt. 31 at ¶ 6. Once a prisoner is within five years of the earned release date, classification reviews switch to a semi-annual schedule and are conducted

[2] This time was restored in 2017, when an audit discovered it had not previously been credited. Dkt. 31 at ¶ 8.

every six months. *Id*. Prisoners do not receive both annual and semi-annual reviews; they are reviewed either annually or semi-annually. *Id*. Defendants also submitted evidence that prisoners cannot receive any further restorations of good time when they are within six months of their earned release date. Dkt. 31-1 at 10.

Defendants' evidence shows that plaintiff received his initial restoration of 120 days on March 15, 2016. Dkt. 31 at ¶ 5; Dkt. 31-1 at 20–24. The next year, at his March 14, 2017 annual review, plaintiff received a restoration of 60 days pursuant to the Pathway. Dkt. 31 at ¶ 7; Dkt. 31-1 at 26–30. In 2017, plaintiff was within five years of his earned release date, so he was supposed to transition to semi-annual reviews. Dkt. 31 at ¶ 9. Because reviews were behind, the two semi-annual reviews were combined, and plaintiff received his two 45-day restorations as a single restoration of 90 days on March 23, 2018. *Id*; Dkt. 31-1 at 52–55. Plaintiff's next semi-annual review led to the restoration of 30 days on November 9, 2018. Dkt. 31 at 11; Dkt. 31-1 at 57–58. The restoration of these days brough plaintiff's earned release date to May 17, 2019—which was within six months, so this restoration provided the maximum number of days permitted under DOC policy and completed the Pathway. Dkt. 31 at ¶ 12; Dkt. 31-1 at 10.

B. <u>Trust Account Deductions</u>

The parties agree that when plaintiff was transferred from custody in California in 2018 to serve the remainder of his time in Washington, he received a transfer deposit of $15,446.81 to his Washington DOC trust account. Dkt. 24 at 12; Dkt. 30 at ¶8. Upon receipt, DOC made certain deductions to these funds in accordance with its Policy 200.00, which (exclusive of a deduction for savings which was later transferred to plaintiff's spendable account) total just over $3,800. Dkt. 24 at 12; Dkt. 30 at ¶ 8.

Plaintiff contends that the transferred amount encompassed the proceeds of a settlement of a Section 1983 lawsuit, and was therefore exempt from these deductions. Dkt. 24 at 12. Specifically, plaintiff asserts that $9,663 of the deposited amount is exempt, and he should be refunded $2,403 in deductions. Dkt. 24 at 14.

Defendants agree that funds from Section 1983 settlements are partially exempt, but state that plaintiff did not provide evidence establishing that his funds were from a Section 1983 settlement until late in the grievance process. Dkt. 30 at ¶¶ 9–11. Upon receipt of that evidence, defendant Medina reviewed plaintiff's California trust account records and determined that $3,633 of the transferred balance was attributable to the settlement and partially exempt from deductions. *Id*. at ¶¶ 11–12. Defendant Medina concluded that $908.32 of the deducted amount was eligible for return, and informed plaintiff that he needed to file a tort claim with the State in order to receive reimbursement. *Id*; Dkt. 30-1 at 45. Plaintiff did not file a tort claim seeking reimbursement of these funds. Dkt. 32 at ¶¶ 3–4.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is supported "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the

outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson*, 477 U.S. at 255. If the moving party meets the initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. Univ. of Oregon,* 698 F.3d 715, 728–29 (9th Cir. 2012). Allegations that are based merely on a party's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197–98 n.1 (9th Cir. 1987) (per curiam).

B. Early Release Claim

Plaintiff alleges he was denied restoration of his good time credit in violation of the Eighth Amendment. Dkt. 24 at 1. Defendants argue that the Eighth Amendment is inapplicable, that plaintiff's claims would arise instead under the Fourteenth Amendment, and that plaintiff fails to establish a Fourteenth Amendment liberty interest. Dkt. 28 at 10–11.

1. Eighth Amendment

To state an Eighth Amendment claim for cruel and unusual punishment, a plaintiff must allege facts showing that the defendants were "deliberately indifferent" in depriving the plaintiff of the "minimal civilized measure of life's necessities." *Hallett v. Morgan*, 296, F.3d 732, 744 (9th Cir. 2002). The Ninth Circuit has held confining a prisoner beyond the termination of his sentence violates the Eighth Amendment. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985).

But that is not plaintiff's claim here. Plaintiff does not contend that he was held beyond the period of his sentence; indeed, the record shows that his "maximum release date" was April 3, 2023 and also reflects that plaintiff is no longer imprisoned. Dkt. 31-1 at 60; Dkt. 4 at 1. As Plaintiff was not confined beyond his sentence, Plaintiff has not established an Eighth Amendment violation. *See Sanchez v. Doe*, No. C16-05201-BHS-DWC, 2017 WL 782760, at *4 (W.D. Wash. Jan. 24, 2017) ("Here, the evidence shows Plaintiff was released on his maximum release date . . .. As Plaintiff was not confined past his release date, Plaintiff has not stated an Eighth Amendment violation."), *report and recommendation adopted*, No. C16-5201-BHS, 2017 WL 772216 (W.D. Wash. Feb. 28, 2017).

Instead, plaintiff contends that he was entitled to, and denied, *earlier* release. Dkt. 24 at 1. This claim, if it is valid, would arise as a deprivation of liberty under the Fourteenth Amendment. If plaintiff cannot establish a liberty interest in early release, then he cannot show that defendants were “deliberately indifferent” in keeping him in prison. *See Foster v. Washington,* No. C11-05171 RBL, 2011 WL 2692971, at *5 (W.D. Wash. July 11, 2011), *aff'd*, 475 F. App’x 241 (9th Cir. 2012). Thus, the validity of plaintiff’s Eighth Amendment claim turns on whether he has established a valid claim under the Fourteenth Amendment. As is discussed in Section (B)(2) below, the Court finds that plaintiff has not established a Fourteenth Amendment liberty interest. Therefore, plaintiff’s complaint fails to state an Eighth Amendment claim.

2. Fourteenth Amendment Liberty Interest

Pursuant to the Due Process Clause of the Fourteenth Amendment, “no state shall ‘deprive any person of life, liberty, or property without due process of law.’” *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986), *overruled on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995). The due process guarantees of the Fourteenth Amendment thus “apply only when a constitutionally protected liberty or property interest is at stake.” *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993). “There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.” *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Madsen v. Washington*, No. C12-5928-RBL-KLS, 2013 WL 1499145, *7 (W.D. Wash. March 13, 2013) (“prisoners have no constitutionally protected liberty interest in an early release”), *report and recommendation adopted*, No. C12-5928-RBL, 2013 WL 1499142 (W.D. Wash. April 10, 2013). State statues or regulations, however, may independently create a due

process liberty interest. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989).

Washington statutes governing the early release of individuals into community custody do not create a liberty interest in that release. RCW § 9.942A.7821 expressly provides:

> [These laws] do not create any expectation that the percentage of earned release time cannot be revised and offenders have no reason to conclude that the maximum percentage of earned release time is an entitlement or creates any liberty interest. (emphasis added).

RCW § 9.942A.7821.

Cases decided under this statute confirm that it does not create a liberty interest. In *Carver v. Lehman*, 558 F.3d 869, 873 (9th Cir. 2009) the Ninth Circuit held that a sex offender who earned early release time for good behavior "is not entitled to early release; rather he is eligible for a discretionary transfer into community custody if his proposed placement is appropriate." In *In re Pers. Restraint of Mattson*, 166 Wash. 2d 730, 739, 214 P.3d 141 (2009), the Washington State Supreme Court reached the same result, holding that RCW § 9.94A.728 "gives DOC wide latitude" in determining whether an individual "may" be released before his sentence expires. Both courts expressly rejected the theory that RCW § 9.94A.728 creates any liberty interest in early release and emphasized that DOC has generous discretion in making this decision. *In re Pers. Restraint of Mattson*, 166 Wash.2d at 740, 214 P.3d 141; *Carver*, 558 F.3d at 876.

Here, plaintiff contends defendants did not restore all of the good time to which the Pathway entitled him. Dkt. 24 at 1. But plaintiff's claim appears to arise out of a misreading of the Pathway, arguing that for each year he should receive restorations for

both annual and semi-annual reviews. Dkt. 24 at 4. Defendants' unrebutted evidence shows, however, that reviews are either annual (if occurring more than five years before the Earned Release Date) or semi-annual (if occurring within five years of that date). Dkt. 31 at ¶ 6. Furthermore, plaintiff's contention that his final restoration should have been 45 days[3] instead of 30 is contradicted by DOC policy prohibiting any further restorations once an inmate is within six months of his early release date. Dkt. 31-1 at 10. As the restoration of 30 days brought that date into the six-month window, that restoration completed the Pathway. Dkt. 31-1 at 63. Thus, the undisputed evidence demonstrates that defendants complied with the terms of the Pathway.

But even if plaintiff were correct in alleging that he should have received additional restorations, plaintiff would not have a liberty interest in earlier release. *See Chaney v. Lehman*, 225 Fed. App'x. 708, 710 (9th Cir. 2007) ("inmates have no clearly established right to a hearing prior to being released to community custody in lieu of earned release time"); *Dailey v. Washington*, No. C11-1250-JLR, 2012 WL 380272, at *4 (W.D. Wash. Feb. 6, 2012) ("receipt of 'good time' credits only enables offenders . . . to timely propose a release address and plan for transfer to community custody"), *aff'd*, 510 F. App'x 505 (9th Cir. 2013); *Foster v. Washington*, No. C11–05171–RBL, 2011 WL 2692971, *2–3 (W.D. Wash. July 11, 2011) (finding plaintiff did not have a liberty interest in his "good time" and was not eligible for release because he did not provide a valid release address).

[3] Plaintiff's amended complaint also alleges that this restoration should have been 60 days. Dkt. 24 at 7. But by this time plaintiff was receiving semi-annual reviews, which made him eligible for a 45-day restoration (if outside of the 6-month period before his Early Release Date). Dkt. 31 at ¶ 9.

The Court therefore recommends plaintiff's claim that he was deprived of a right to early release be dismissed with prejudice.

C. Trust Account Deduction Claims

Plaintiff contends defendants deprived him of his property rights by making unauthorized deductions to funds transferred into his DOC trust account. Dkt. 24 at 11. Defendants argue that plaintiff cannot state a Fourteenth Amendment claim because an adequate post-deprivation remedy was available to him. Dkt. 28 at 15.

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) (citations omitted), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).

However, an unauthorized deprivation of a prisoner's property—whether it is done intentionally or negligently—does not constitute a violation of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available under state law. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984); *see also Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002). The State of Washington provides a meaningful post-deprivation remedy for the intentional or negligent loss of property by state agents and employees. In Washington, a plaintiff may file a tort claim against the State for unlawful loss or destruction of inmate property. RCW 72.02.045; RCW 4.92.090–100; *see Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1345–46 (9th Cir. 1981); *see also Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. Wash. 1986).

Here, plaintiff contends that defendants made unauthorized deductions from his DOC trust account. Dkt. 24 at 1. Defendants agree that some of the deductions should be reimbursed. Dkt. 30 at ¶ 12; Dkt. 30-1 at 45. Defendants instructed plaintiff to file a

tort claim to receive a reimbursement, but he has failed to do so. *Id*. Because the alleged deprivation here was unauthorized and a meaningful post-deprivation remedy exists under state law, plaintiff has failed to establish a Fourteenth Amendment claim for deprivation of property. *Hudson*, 468 U.S. at 534.

Accordingly, the Court recommends that plaintiff's Section 1983 claims for deductions from his DOC trust account be dismissed with prejudice.

D. Qualified Immunity

Defendants also contend that they are shielded from claims for damages by qualified immunity. Dkt. 28 at 16–17. Because the Court has determined that plaintiff's section 1983 claims fail for other reasons, it does not reach defendants' qualified immunity argument.

E. State Law Claims

Plaintiff also asserts state law claims for negligence and intentional infliction of emotional distress. Dkt. 24 at 1, 11, 14.

Federal courts have supplemental jurisdiction to consider state law claims when they are "so related" to the federal claims that they "form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction is designed to promote "judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). However, when all federal claims have been dismissed, the interests promoted by supplemental jurisdiction are no longer present, and a court may decline to exercise jurisdiction over state law claims. 28 U.S.C. § 1367(c); *Carnegie-Mellon University*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience,

fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

As discussed above, the Court recommends that plaintiff's federal claims be dismissed. The Court therefore finds it appropriate to decline the exercise of supplemental jurisdiction over plaintiff's state law claims and recommends that they be dismissed without prejudice.

F. In Forma Pauperis Status on Appeal

The Court must also decide whether plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. § 1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

Because Plaintiff's claims fail as a matter of law, any appeal would likewise lack an arguable basis in law. Accordingly, the Court recommends that *in forma pauperis* status should be revoked in the event of an appeal.

CONCLUSION

Based on the foregoing discussion, because plaintiff has failed to establish his claims under the Eighth and Fourteenth amendments, the undersigned recommends the Court grant defendants' motion for summary judgment (Dkt. 28) and dismiss plaintiff's complaint. Plaintiff's Section 1983 claims should be dismissed with prejudice and his state law claims for negligence and intentional infliction of emotional distress should be dismissed without prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6; Fed. R. Civ. P. 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **October 8, 2021**, as noted in the caption.

Dated this 23rd day of September, 2021.

Theresa L. Fricke
United States Magistrate Judge